In the Matter of the **GEORGIAN VILLA, INC.**, a Georgia Nonprofit Corporation, Debtor.

In the Matter of **ATLANTA WEST GENERAL HOSPITAL, INC.**, a Georgia Nonprofit Corporation, Debtor.

**Bankruptcy Nos. B77–2621A, B77–2622A.**

United States Bankruptcy Court, N. D. Georgia, Atlanta Division.

Feb. 3, 1981.

---

Morris K. Sirote, Sirote, Permutt, Friend, Friedman, Held & Apolinsky, Birmingham, Ala., for City National Bank.

## ORDER

HUGH ROBINSON, Bankruptcy Judge.

The objections of City National Bank of Birmingham to the allocation of certain administrative expenses against the "Bondholder Fund" brought the issues involved herein before the Court. This matter came on regularly to be heard before this Court on October 7, 1979. The hearing was continued until October 16, 1979 and was concluded on the following day. Having considered the objections, the arguments and briefs of the parties and the relevant parts of the case file, the Court makes the following decision.

## FINDINGS OF FACT

The Georgian Villa, Inc. and Atlanta West General Hospital, Inc. were the owners and operators of a 320 bed, acute care hospital in Douglas County, Georgia. On September 29, 1977 both of these corporations filed petitions under Chapter XI of the Bankruptcy Act.

City National Bank of Birmingham is the successor indenture trustee under the Trust Indenture for the Atlanta West Hospital Serial First Mortgage Sinking Fund Series I Bonds.[1] These bonds were issued by The Georgian Villa, Inc. and were secured by the real property of The Georgian Villa, Inc. and certain revenues received by the issuer.

On December 20, 1979 Atlanta West Hospital was sold to the Hospital Corporation of America[2] for $22 million. In accordance with the Judgment and Order of this Court dated December 20, 1979 the proceeds of the sale were divided into two funds, the General Fund consisting of the proceeds equal to the value of the assets not subject to the lien of the Trust Indenture and the Bondholder Fund consisting of proceeds equal to the value of the assets subject to the lien of the Trust Indenture.

The proceeds of the General Fund have been expressly reserved for distribution to the general unsecured creditors of the bankrupt estate. The proceeds of the Bondholder Fund will be distributed to the holders of the Atlanta West Bonds.

The Order and Judgment of December 20, 1979 provides that costs of administration allowed by this Court shall be born pro rata by the General Fund and the Bondholder Fund in proportion to the amounts of the respective funds. Under this apportionment the Bondholder Fund bears 86.3% of the administrative costs allowed by this Court.

On September 10, 1980 the Successor Indenture Trustee filed a "Motion of City National Bank of Birmingham, as Successor Indenture Trustee, for a Hearing (1) Upon Its Objections to the Claims of First National Bank; and (2) Upon Its Objections to the Allowance of Certain Administrative Costs Against the 'Bondholder Fund'". In this motion the Successor Indenture Trustee asserted objections to the allowance against the Bondholder Fund of certain payments made by the Receiver to the Internal Revenue Service, Harriscorp, Techlease, the State of Georgia, the I. A. T. Corporation, Medical Center West, the Georgia Department of Labor, the law firm Almand, Grice, Knight & Mills and the Department of Health, Education and Welfare.

An "Amendment to Motion of Successor Indenture Trustee for an Order Disallowing Certain Items of Expense as not Constituting Administrative Costs Allowable to the 'Bondholder Fund'; and Motion for Rehearing of Order of December 20, 1979 as to Allocation of Administrative Expenses" was filed by the Successor Indenture Trustee on October 7, 1980. In this amended motion

1. Hereinafter City National Bank will be referred to as the "Successor Indenture Trustee", and the Atlanta West Serial First Mortgage Sinking Fund Series I Bonds will be referred to as "the Atlanta West Bonds".

2. Hereinafter the Hospital Corporation of America will be referred to as "HCA".

the Successor Indenture Trustee objects to the allowance of a part of the fees awarded to the Receiver and to the Receiver's attorneys against the Bondholder Fund. The Successor Indenture Trustee also objects to the allocation of any liability for malpractice claims against the bankrupt estate to the Bondholder Fund.

## APPLICABLE LAW

An agreement has been reached between the Receiver and the Successor Indenture Trustee with regard to the costs charged against the Bondholder Fund for payments made to the Internal Revenue Service, Medical Center West and the Department of Health, Education and Welfare and with regard to the allocation of liability for malpractice claims between the two funds. As these matters are no longer in dispute they will not be addressed by the Court.

## PAYMENTS MADE TO HARRISCORP, TECHLEASE AND THE I. A. T. CORPORATION

The Successor Indenture Trustee alleges that the payments made to Harriscorp, Techlease and the I. A. T. Corporation were made to satisfy the claims of these three creditors. It is argued that because the purpose of these payments was the settlement of claims the payments do not constitute administrative expenses which may properly be charged against the Bondholder Fund.

Harriscorp and Techlease were among various creditors that leased equipment to the debtors herein. They both claimed ownership rights in the leased equipment superior to the rights of the debtors, the Receiver and the other creditors. The contract for the sale of Atlanta West Hospital required the delivery to HCA of all equipment used by Atlanta West Hospital free and clear of all liens, claims and encumbrances. In order to effectuate the delivery as required by the contract the Receiver proposed settlements with various equipment lessors including Harriscorp and Techlease which were incorporated in this Court's order and judgment of December 20, 1979.

I. A. T. had a perfected security interest in the accounts receivable of the debtors. The contract for the sale of Atlanta West Hospital to H. C. A. required the delivery of all of the debtors' accounts receivable to HCA free and clear of all liens, claims and encumbrances. In order to fulfill this requirement the Receiver proposed a settlement of I.A.T.'s claim which was also incorporated into the judgment and order of December 20, 1979.

The costs presently objected to do not consist of payments made pursuant to the December, 1979 judgment and order. However, the Successor Indenture Trustee argues that the disputed payments are no different in kind than those ordered by this Court to be made in settlement of certain claims.

The Receiver does not agree with the Successor Indenture Trustee's characterization of the disputed payments. It is contended by the Receiver that the payments to Harriscorp and Techlease were for arrearages in payments required to be made as administrative expenses by orders of this Court. The payment to I. A. T. was allegedly required to be made pursuant to an agreement entered into by I. A. T. and the Receiver. From reviewing the record the Court must conclude that the contentions of the Receiver are correct.

At one time Harriscorp sought to reclaim the equipment it had leased to Atlanta West Hospital. To provide Harriscorp interim relief until the merits of the reclamation petition could be determined this Court entered an order on December 23, 1977 authorizing the Receiver to pay Harriscorp $2,000.00 per week plus 10% of the monthly operating profits of Atlanta West Hospital as an administrative expenses for the use of the leased equipment. In the weeks prior to the closing of the sale of the hospital these payments were not made causing arrearages to accumulate. The purpose of the disputed payment to Harriscorp was to pay these arrearages.

The contract for the sale of Atlanta West Hospital required the Receiver to deliver all of the equipment of the hospital to HCA

free and clear of all liens, claims and encumbrances. Harriscorp claimed an ownership interest in the equipment it had leased to the hospital. It was this ownership claim which was settled in this Court's order of December 20, 1979 and not Harriscorp's claim for the payments required to be made by the court order of December 23, 1977.

The order of December 23, 1977 was in no way vacated or modified during the course of these bankruptcy proceedings, therefore the estate was not relieved from the obligation to make the periodic payments to Harriscorp. As a result of the nonpayment of this obligation, arrearages accumulated which were paid by the Receiver after the sale of the hospital was closed. Contrary to the contention of the Trustee, this payment is different in kind from the payment made to Harriscorp in settlement of its ownership claim. The fact that the accumulated debt was paid in one lump sum does not change the basic character of this payment from an administrative expense to the settlement of a claim. Accordingly the Court concludes that the payment to Harriscorp was made pursuant to December 23, 1977 order and was therefore an administrative expense allocable to the Bondholder Fund.

The payment made by the Receiver to Techlease presents a situation identical to that presented by the Harriscorp payment. Techlease sought the reclamation of the equipment it had leased to Atlanta West Hospital. In order to provide interim relief to Techlease this Court ordered the Receiver to pay Techlease $320.00 per week plus 1.6% of the monthly operating profits of the hospital as an administrative expense.[3] For seventeen weeks prior to the closing of the sale of the hospital these payments were not made. The disputed payment to Techlease was for the accumulated arrearages in the payments due under this Court's order. As was the case with Harriscorp, Techlease asserted a claim of ownership against the leased equipment which was settled by a provision in the order of December 20, 1979. For the reasons stated with respect to the Harriscorp payment, this Court finds that the disputed payment to Techlease was made pursuant to the order of January 31, 1978 and therefore was an administrative expense properly chargeable against the Bondholder Fund.

I. A. T. had a perfected security interest in the accounts receivable of Atlanta West Hospital. An adversary action was commenced by I. A. T. in these bankruptcy proceedings to determine its rights in the accounts receivable. Following this litigation I. A. T. and the Receiver entered into an agreement under which the Receiver agreed to make weekly payments of $2,000.00 to I. A. T. as consideration for the Receiver's use of the proceeds of the hospital's accounts receivable. For twenty-two weeks prior to the closing of the sale of the hospital these payments were not made. The purpose of the disputed payment to I. A. T. was to pay for these arrearages.

The claim of I. A. T. to a security interest in the accounts receivable of Atlanta West Hospital was settled by a provision of the Court's order of December 20, 1979. However, this settlement did not encompass I. A. T.'s claim for payments under the agreement between the Receiver and I.A.T. Under this agreement the Receiver was required to make payments to I. A. T. as consideration for the Receiver's use of the proceeds of the hospital's accounts receivable. The use of these proceeds was necessary for the protection and preservation of the bankrupt estate, therefore the payments made to I. A. T. by the Receiver pursuant to the agreement constituted administrative expenses under Section 64(a)(1) of the Bankruptcy Act, 11 U.S.C. § 104(a)(1). 3A *Collier on Bankruptcy* (14th Edition) ¶ 64.102[1]. Because the disputed payment to I. A. T. was made pursuant to the agreement between the Receiver and I. A. T., it constitutes an administrative expense properly allocable to the Bondholder Fund.

## TAXES

The Successor Indenture Trustee objects to the assessment against the Bondholder

---

**3.** Order of January 31, 1978.

Fund of $34,725.00 for withholding taxes paid to the State of Georgia and $54,829.00 for state unemployment taxes paid to the Employment Security Agency, Georgia Department of Labor. These payments were for taxes which accrued during the pendency of the Chapter XI proceedings. It is argued that only taxes against the real property of the debtors may be assessed against the Bondholder Fund. In making this argument the Successor Indenture Trustee relies on Paragraph 6, p. 16 of the judgment and order of this Court entered December 20, 1979 which provides:

"6. *Tax Liens*

a. All tax liens shall attach to the proceeds of sale of the Hospital Assets.

b. Tax liens which are found to be valid against the real property of the Debtors shall be paid out of or reserved from the Bondholder Fund prior to any other distribution from such fund and all other valid tax liens shall be paid out of or reserved from the General Fund prior to any other distribution from such fund."

To resolve this issue the Court must interpret Paragraph 6 of the December, 1979 order and judgment.

■ Taxes which accrue during the pendency of bankruptcy proceedings are administrative expenses which have first priority under Section 64(a)(1) of the Bankruptcy Act, 11 U.S.C. § 104(a)(1), 3A *Collier on Bankruptcy* (14th Edition) ¶ 64.102[1]. Because administrative expenses have first priority under Section 64 of the Bankruptcy Act, it is unlikely that tax liabilities arising during the pendency of bankruptcy proceedings will be delinquent thus causing a tax lien to attach to the property. Paragraph 6 of the December, 1979 judgment and order refers to "tax liens". By using the term "tax liens" this Court intended to refer to those unpaid taxes which were in existence at the time the debtors filed petitions under Chapter XI of the Bankruptcy Act. Those taxes accruing after the filing of the petitions are administrative expenses.

Because the payments made by the Receiver to the Employment Security Agency and to the State of Georgia were for taxes which accrued during the pendency of these Chapter XI proceedings they were administrative expenses properly allocable to the Bondholder Fund.

### PAYMENTS TO ALMAND, GRICE, KNIGHT & MILLS

The Successor Indenture Trustee objects to the allocation of costs to the Bondholder Fund for fees awarded to Almand, Grice, Knight & Mills, the attorneys for the debtors. It is argued that the bondholders received no benefit from the services performed by the debtors' attorneys, therefore they should not bear any of the costs associated therewith.

■ Attorneys for debtors may recover fees from the bankrupt estate only for services rendered in aid of the administration of the estate and the carrying out of the provisions of the Bankruptcy Act. 3A *Collier on Bankruptcy* (14th Edition) ¶ 62.31[1]. In allowing the law firm Almand, Grice, Knight & Mills to recover fees from the estate, this Court found that the services rendered by the attorneys in fact aided the administration of the estate. There is no doubt that the actions taken by various parties to administer or to aid the administration of the bankrupt estate inured to the benefit of all creditors, secured and unsecured. The services rendered by Almand, Grice, Knight & Mills for which compensation was awarded are no exception. Accordingly this Court concludes that the fees awarded to the debtors' attorneys are administrative expenses a part of which may be allocated to the Bondholder Fund.

### FEES AWARDED TO THE RECEIVERS AND THE RECEIVERS ATTORNEYS

The Successor Indenture Trustee has asserted several objections to the allowance of any portion of the fees awarded to the Receiver and the Receiver's attorneys against the Bondholder Fund. First it is argued that these fees are not attributable to the sale of the hospital assets or to the

preservation of the property. The Successor Indenture Trustee next contends that $440,497.88 of the fees awarded to the Receiver are attributable to the disbursement of funds by the Receiver to creditors and are therefore unrelated to any activity which benefitted the bondholders. Finally it is contended that the Receiver's attorneys were in a position adverse to the Successor Indenture Trustee and therefore should not be compensated from the Bondholder Fund.

On May 14, 1980 this Court entered an order awarding the Receiver fees in the amount of $791,996.20. Many factors were taken into consideration in determining the amount of the fees to be awarded to the Receiver including the Receiver's expertise in bankruptcy law and the amount of time spent by the Receiver on matters pertaining to these bankruptcy proceedings. Although various factors were taken into account by the Court the extensive services performed by the Receiver in connection with the administration of the estate including services related to the preservation of the estate and the sale of the hospital formed the main basis for the fees awarded to the Receiver. Therefore the Successor Indenture Trustee's argument that the fees awarded to the Receiver are not attributable to the sale of the hospital and the preservation of the assets of the estate is without merit.

The Successor Indenture Trustee argues that $440,497.88 of the fees awarded to the Receiver are attributable to the disbursement of funds by the Receiver to the creditors and therefore are unrelated to any activity which benefitted the bondholders.

The compensation of a receiver is based on the amount of money he disburses. Section 48(a)(2) of the Bankruptcy Act, 11 U.S.C. § 76(a)(2). Additional compensation may be awarded to the receiver in the court's discretion if the receiver is authorized to operate the debtor's business. Section 48(a)(3) of the Bankruptcy Act, 11 U.S.C. § 76(a)(3). Although at least part and sometimes the entire amount of a receiver's fees is determined by the amount of money he disburses, Section 48(1)(2) is merely a standard of measurement, it does not delineate the services performed by the receiver.

Under Rule 201 of the Bankruptcy Rules the bankruptcy court may appoint a receiver to (1) take charge of the property of the bankrupt; (2) to conduct the business of the bankrupt; or (3) to afford representation to the estate in an action, adversary proceeding or contested matter when no trustee has qualified or the interest of the trustee may be adverse to the estate. The function of taking charge of the property in and of itself requires the receiver to take steps to protect and preserve the property. Yet if this had been the only function served by the Receiver in the instant case, he would have been entitled only to that compensation provided for in Section 48(a)(2) regardless of extent and nature of the services performed in connection with that function. Thus, the Successor Indenture Trustee's argument that $440,497.88 of the fees awarded to the Receiver were related only to the Receiver's disbursement of money to creditors is without merit.

There is no doubt that all of the creditors of this estate both secured and unsecured have derived great benefit from the innumerable services performed by the Receiver in connection with the administration of the bankrupt estate. For this reason the Court concludes that the Bondholder Fund may be charged with a portion of the fees awarded to the Receiver.

The Successor Indenture Trustee objects to the assessment against the Bondholder Fund of a portion of the compensation awarded to the Receiver's attorneys for the reasons that the Receiver's attorneys were in a position adverse to the Successor Indenture Trustee. It is true that in the past the Successor Indenture Trustee and the Receiver's attorneys have taken opposing positions as to how the estate should be administered. However this clash of opinions is irrelevant to the issue of whether the Bondholder Fund may be assessed for a part of the compensation awarded to the Receiver's attorneys. Throughout the course of their representation of the Receiver, these attorneys have assisted the Receiv-

882

er in his performance of the many services which ultimately benefitted all of the creditors of this estate. Therefore the Court concludes that a part of the fees awarded to the Receiver's attorneys should be charged against the Bondholder Fund.

CONCLUSIONS OF LAW

1. The payments made by the Receiver to Harriscorp, Techlease and I. A. T. were administrative expenses properly allocable to the Bondholder Fund.

2. The taxes paid by the Receiver to the State of Georgia and the Employment Security Agency were administrative expenses properly allocable to the Bondholder Fund.

3. The services performed by the Receiver and the Receiver's attorneys benefitted all of the secured and unsecured creditors of this bankrupt estate. Therefore a part of the fees awarded to the Receiver and to the Receiver's attorneys may properly be allocated to the Bondholder Fund. It is therefore

ORDERED that the objections of the Successor Indenture Trustee to the allocation of certain administrative expenses to the Bondholder Fund shall be and same are hereby dismissed.