**In re PHOTON INC., Bankrupt.**

**Bankruptcy No. 74–1910–L.**

United States Bankruptcy Court,
D. Massachusetts.

July 29, 1982.

Supplemental Opinion on Denial of
Reconsideration Dec. 20, 1982.

Gaston Snow & Ely Bartlett, Boston, Mass., Co-counsel for Trustee.

Friedman & Atherton and Gaston Snow & Ely Bartlett, Boston, Mass., Co-counsel to the Trustee, Joint Petition.

John H. Kelleher, Boston, Mass., Special Counsel to the Trustee.

Goodwin, Procter & Hoar, Boston, Mass., Counsel to the Debtor.

Mann & Ungar, Philadelphia, Pa., Special Counsel to the Trustee.

## MEMORANDUM AND ORDER RE FINAL ALLOWANCES

THOMAS W. LAWLESS, Chief Judge.

This matter arises upon consideration of applications for final allowances filed by various functionaries who have rendered services to the estate.

On November 6, 1974, Photon Inc. filed a voluntary petition for an arrangement under Chapter XI of the Bankruptcy Act (formerly 11 U.S.C. § 701, *et seq.*). One week later, an operating Receiver was appointed. On February 7, 1975, the Debtor proposed a plan of arrangement. This plan was rejected by the Creditors' Committee. On February 14, 1975, Photon was adjudicated a bankrupt and a Trustee was appointed. The Trustee operated the business of Photon until March 31, 1975 at which time all of the bankrupt's assets were sold to Dymo Industries for $3,850,000.00. Subsequent to this sale, the Trustee's co-counsel prosecuted various litigation matters, some of which had been pending prior to the commencement of the Chapter XI proceeding. One such action, brought against the bankrupt's accountants and officers, resulted in recovery by the estate of approximately $435,000.00. The Trustee's co-counsel engaged in other adversary proceedings which resulted in a benefit to the estate of approximately $104,000.00.

Bankruptcy courts are empowered to determine and allow the payment of reasonable compensation for services rendered in the administration of a bankrupt estate. *Carter v. Woods,* 433 F.Supp. 291 (W.D.Mo. 1977). Bankruptcy Rule 219(c)(1) states:

The compensation allowable by the court to a trustee, receiver, marshal, attorney, accountant, or other person entitled to compensation for services rendered in the administration of a bankrupt estate shall be reasonable, and in making allowances the court shall give due consideration to the nature, extent, and value of the services rendered as well as to the conservation of the estate and the interests of creditors.

Sections 62a(1) and 64a(1) of the Bankruptcy Act, 11 U.S.C. § 102(a)(1) and § 104(a)(1)[1] authorize such compensation and provide the statutory basis for Rule 219. This Rule is applicable in Chapter XI cases through Rule 11–31[2] which further authorizes the allowance of compensation to the attorney for the debtor and the debtor in possession regardless of the success or failure of the arrangement proceeding. *In re Designaire Modular Home Corp.,* 517 F.2d 1015 (3rd Cir.1975). Nevertheless, "[t]he measure of reasonableness of fees in an arrangement proceeding is largely tied to the success of the arrangement." *Matter of Myers,* 4 B.R. 343, 345 (Bkrtcy., M.D.Fla. 1980).

Rule 11–29(c)[3] governs the compensation of creditors' committees and authorizes a

---

**1.** These provisions apply to Chapter XI proceedings through § 302 of the Act, 11 U.S.C. § 702.

The Bankruptcy Code of 1978, Pub.L. No. 95–598, 92 Stat. 2549 (1978), repealed the Bankruptcy Act of 1898, as amended, in its entirety. The new Code was not effective until October 1, 1979 and cases commenced prior to that date are governed by the old Act. Pub.L. No. 95–598, § 403(a), 92 Stat. 2683 (1978). This case was commenced in 1974, therefore, it is governed by the provisions of the Bankruptcy Act.

**2.** Chapter XI Rule 11–31 provides:
"Bankruptcy Rule 219 applies in Chapter XI cases. Reasonable compensation for services beneficial to the estate and reimbursement of necessary expenses may be allowed to the attorney for the debtor and debtor in possession whether or not a plan is confirmed."

Prior to the effective date of the Bankruptcy Rules there was some question as to whether a debtor's attorney in a failed arrangement proceeding could receive compensation out of the bankrupt estate. The Ninth Circuit, in *Robinson, Wolas & Hagen v. Gardner,* 433 F.2d 1104 (9th Cir.1970), held that if an arrangement was unsuccessful no attorneys fees could be paid out of the bankrupt estate to the debtor's attorney. The Second Circuit took the contrary position that fees could be paid to the debtor's attorney from the bankrupt estate in a superceded Chapter XI proceeding. *In re Casco Fashions Inc.,* 490 F.2d 1197 (2nd Cir.1973). The Advisory Committee's Note to Rule 11–31 supports the Second Circuit holding.

**3.** Rule 11–29(c) provides in part:
Expenses of the committee, including compensation for attorneys, accountants, and other

bankruptcy judge, in the exercise of his discretion, to permit payment out of the bankrupt estate to the creditors' committee, its attorneys and agents, for services rendered, even if an arrangement is not confirmed. *In re Botany Industries Inc.,* 403 F.Supp. 234 (E.D.Pa.1975).

This court is mindful of the strong policy of the Bankruptcy Act that bankrupt estates be administered as economically as possible.[4] *Matter of U.S. Golf Corp.,* 639 F.2d 1197 (5th Cir.1981); *Matter of First Colonial Corp. of America,* 544 F.2d 1291 (5th Cir.1977). This does not mean that in awarding fees bankruptcy judges should be "parsimonious" for this would discourage able and competent professionals from offering their services in bankruptcy cases. However, fee awards should be in amounts which are "at the lower end of the spectrum of reasonableness." *Jacobowitz v. Double Seven Corp.,* 378 F.2d 405, 408 (9th Cir.1967). Other considerations that affect attorneys fee awards in bankruptcy proceedings are the policies against duplication of fees and compensation for non-legal services. *Matter of U.S. Golf Corp., supra.*

One absolute condition of payment to an attorney or accountant who renders services to a trustee or receiver in a bankruptcy case is court authorization of that attorney or accountant prior to the performance of those services. *See* Bankruptcy Rule 215.[5] This Rule furthers the policy of discouraging duplicate claims for compensation. It also provides the bankruptcy court an opportunity to consider the competency, experience, and necessity of employing the particular attorneys and accountants whose services are requested. *In re Hydrocarbon Chemicals Inc.,* 411 F.2d 203 (3rd Cir.1969).

In addition to the principles discussed above, the circuit courts have attempted to establish objective standards for fee allowances by setting forth specific criteria that must be considered when determining fees. However, even with these standards, the determination of fees essentially remains a subjective process.

Until recently, trial courts in the First Circuit applied the twelve factor test set forth in *King v. Greenblatt,* 560 F.2d 1024, 1026–27 (1st Cir.1977) whenever an award of attorneys fees was authorized by statute.[6] However, in *Furtado v. Bishop,* 635 F.2d 915, at 920 (1st Cir.1980), the court expressed dissatisfaction with the *Greenblatt* analysis when it stated that "commenting on the twelve factors ... may not in any real sense contribute to the rational setting of a fee; the comments are imprecise and the items overlap." Rather than abolishing the factors outlined in *Greenblatt,* the *Furtado* court reorganized them in an attempt to provide "a useful analytical framework that can be applied by trial courts in all cases and can also lend itself to meaningful review." 635 F.2d at 920. The court went on to adopt the two step "lode-

agents employed under subdivision (b) of this rule, whether incurred before or after the filing of the petition, shall be allowed in the event of confirmation as an expense of administration to the extent deemed reasonable and necessary by the court, and may be allowed when there is no confirmation.

4. This consideration is not applicable to fee determinations under the new Bankruptcy Code. § 330(a)(1) of the Code specifically provides that compensation shall be "based on the ... value of such services, and the cost of comparable services other than in a case under this title...."

5. Rule 215(a) provides in part:
"No attorney or accountant for the trustee or receiver shall be employed except upon order of the court."
Rule 11–22 applies Rule 215 to proceedings under Chapter XI and further requires that attorneys and accountants for the debtor in possession and creditors' committee obtain court authorization before rendering services.

6. These factors are as follows:
(1) the time and labor required; (2) the novelty and difficulty of the question presented; (3) the skill required to perform the legal services; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

star" analysis employed by the Third and D.C. Circuits.[7] The first step of this analysis is to calculate a lodestar fee. In order to perform this calculation the court must receive documentation, or perhaps hold a hearing on the matter of fees. The services provided must then be separated in relation to the firm's hierarchy, from senior partner to junior associate to work which was or should have been performed by a non-lawyer. Appropriate hourly rates must be assigned for the kinds of work done by those at different levels of expertise.[8] The court must also eliminate any time expended in excess of an amount which would be necessary for reasonably competent and reasonably diligent representation. The reasonable hourly rate is then multiplied by the number of hours reasonably expended to arrive at the lodestar fee. At this stage, the lodestar calculation has taken account of such *Greenblatt* factors as: the time and labor required; the experience, reputation and ability of the attorney; the customary fee in the community; awards in similar cases; and the novelty and difficulty of the questions presented. The second step of the analysis is to adjust the lodestar up or down to reflect factors which have not already been taken into account in computing the lodestar. These factors may include: the contingent nature of success in the law suit; the quality of legal representation (i.e. performance which was either better or worse than the skill already reflected in the hourly rates); delay in payment; and the results obtained. *Furtado, supra,* 635 F.2d at 920.

█ Attorneys and other professionals who seek payment for services must provide accurate and detailed information regarding the amount of time spent and the manner in which it was spent. *Souza v. Southworth,* 564 F.2d 609 (1st Cir.1977). If there is no itemization, no fee can be awarded. *In re Orbit Liquor Store,* 439 F.2d 1351 (5th Cir.1971); *In re Garland Corp.,* 8 B.R. 826 (Bkrtcy., D.Mass.1981). *See* Bankruptcy Rule 219(a).

Guided by the consideration discussed above, I now turn to the individual fee applications.

## COUNSEL TO THE DEBTOR

The law firm of Goodwin, Procter & Hoar ("G,P & H"), counsel to the Debtor, requests a final fee allowance of $20,156.00.

During the period of January 1, 1974 through October 30, 1974, Photon paid G,P & H $156,700.00 for services rendered and $7,054.51 for expenses. The Trustee has not challenged these payments on the grounds that they are preferential and in the absence of an objection, the court must assume that the payments were proper.

G,P & H was authorized to represent the Debtor in the Chapter XI proceedings on November 6, 1974. On the same day, Photon paid G,P & H a $50,000.00 retainer together with $5,478.88 in satisfaction of outstanding bills. The retention of the retainer was authorized by the court on June 29, 1977 and the $5,478.88 payment has not been challenged by the Trustee.

Approximately three months after the commencement of the proceedings under Chapter XI, the arrangement failed and Photon was adjudicated a bankrupt. Upon adjudication, Photon became "civiliter mortuus" and had no further interest in its property or estate. *In re Henry Wood Sons*

---

7. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3rd Cir.1973) and *Lindy Bros. Builders, Inc., v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3rd. Cir.1976) (en banc); *Copeland v. Marshall,* 641 F.2d 880 (D.C.Cir.1980) (en banc).

8. In very large cases, such as the one at hand, bankruptcy courts frequently use an overall average hourly rate. Using an overall average is less accurate than the method outlined in *Furtado, supra,* however, it is a practical necessity in the instant case. In reviewing the various applications, it is often impossible to ascertain which lawyer performed a particular task. The large number of lawyers and the absence from many applications of the total number of hours worked by each lawyer further complicates matters. In addition, applying an overall average encourages the use of associates and junior partners. *In re Garland, supra,* 8 B.R. at 835 N. 8.

Co., 279 F. 608 (D.Mass.1922); *See also Goodwin's Discount Furniture Inc.,* 16 B.R. 885 (Bkrtcy., 1st Cir.1982). The bankrupt's property interests passed to the Trustee by virtue of § 70 of the Bankruptcy Act, 11 U.S.C. § 110. Consequently, the Trustee's counsel assumed the duty of rendering legal services regarding property of the bankrupt's estate.

■ Subsequent to adjudication, G,P & H assisted the Trustee and his co-counsel in various matters. However, G,P & H never received court authorization to perform services for the Trustee. The allowance of compensation for these services would contravene the mandate of Rule 215. Although the application of this rule may frequently produce a harsh result, the law is settled that an unauthorized volunteer, even if his services have benefitted the estate cannot be compensated out of the estate when those services should have been performed by the trustee or his attorney. *In re Hydrocarbon Chemicals Inc., supra; In re: Calpa Products Co.,* 411 F.2d 1373 (3rd Cir.1969); *In re Porto Rican American Tobacco Co.,* 117 F.2d 599 (2nd Cir.1941); *In re Progress Lektro Shave Corp.,* 117 F.2d 602 (2nd Cir.1941); *In re Garland, supra.* Further, the fee application submitted by G,P & H indicates that a substantial portion of the post adjudication services rendered by that firm regarding *inter alia* the sale to Dymo, sales tax matters and litigation with Pacer Corporation were duplicative of services performed by the Trustee's co-counsel. No compensation shall be allowed G,P & H for post adjudication services that should have been rendered by the Trustee's co-counsel.

■ Specific services performed for the Debtor by G,P & H during the Chapter XI proceedings included: preparation of reports for the Securities and Exchange Commission; research of dischargeability issues; research regarding the amendment of the corporate charter; obtaining operating funds; negotiations with the Creditors' Committee and various acquisition candidates; negotiations relating to a patent license agreement and the shipment of goods from a supplier; and examination of the claims of creditors.

After considering the customary fee in the community at the time these services were rendered, awards in similar cases and the experience and ability of the attorneys, I conclude that $65.00 per hour is a reasonable hourly rate for the services rendered by G,P & H.

After reviewing the application and the services described therein, and considering the complexities of the case, I find that 805 hours were reasonably expended by G,P & H in its representation of the Debtor.

Multiplying the reasonable hourly rate of $65.00 per hour times the number of hours reasonably expended results in a lodestar fee of $52,325.00.

In regard to the second step of the analysis, the court finds that no further adjustment of the lodestar is warranted.

The fee application lists an additional forty-five hours representing time billed for paralegal services. The court will allow compensation for these services at a rate of $30.00 per hour for a total of $1,350.00.

The total allowance to G,P & H is as follows:

$52,325.00 for legal services
$ 1,350.00 for paralegal services
$53,675.00 total

However, G,P & H has already received the following payments:

$ 50,000.00 retainer [9]
$ 22,243.11 interim fee
$ 72,243.11 total

Insofar as G,P & H has received funds in excess of the amount to which it is entitled as a final allowance, it must return those funds to the Trustee. G,P & H must return to the estate the difference between the $72,243.11 it has already received and its $53,675.00 final allowance, or $18,568.11.

---

**9.** The court must consider the retainer in determining counsel's final fee. *See In re Wingreen*

*Co.,* 452 F.2d 637 (5th Cir.1971).

RECEIVER—TRUSTEE

On November 12, 1974, Edward F. McLaughlin was appointed Receiver in the arrangement proceedings and authorized to operate the business of the Debtor. He was appointed Trustee in bankruptcy on February 14, 1975 and, pursuant to an order of this court, he continued to operate the business of the bankrupt until the sale thereof on March 31, 1975. Subsequent to this sale, the Trustee monitored certain litigation commenced and prosecuted by his attorneys.

This applicant requests an allowance of $78,749.24 for services rendered during his tenure as Receiver and then as Trustee. He also seeks an allowance of $56.71 for expenses. He has already received a total of $131,350.76 in interim payments for services rendered.

The instant fee application does not contain a detailed outline of the amount of time spent or how that time was spent. There is simply a general description of the services performed followed by a statement that the value of the total services rendered is in excess of $210,000.00. This will not suffice. A fee applicant must submit a detailed record that will enable the court to calculate the value of the services for which compensation is sought. The court shall allow this applicant an additional 30 days to submit the time sheets and other documents that are necessary for an intelligent determination of his fee.

CO–COUNSEL TO THE
RECEIVER–TRUSTEE

On November 25, 1974, this court authorized the retention and employment of Frank H. Shapiro on behalf of the firm of Friedman & Atherton ("F & A") and Charles W. Bartlett on behalf of the firm of Gaston Snow & Ely Bartlett ("G & S") as attorneys for the Receiver in the Chapter XI proceedings. By order of this court, dated February 14, 1975, the Trustee was authorized to employ Frank H. Shapiro and Charles W. Bartlett as his counsel in the Photon bankruptcy proceeding.

At the early stages of these proceedings, co-counsel reviewed the operations of Photon and interviewed various officers, directors and personnel of the company. Co-counsel examined the company's rights and obligations under various security agreements, loan documents and purchase orders. They arranged for borrowing by the Receiver and Trustee and they negotiated settlements with various suppliers of Photon who had filed complaints for reclamation. Co-counsel performed services relating to insurance matters and Photon's obligations under regulations of the Securities and Exchange Commission. F & A and G & S were largely responsible for the sale of the assets of Photon as a going concern. They worked on all matters connected with the sale and solved problems which arose at the closing and subsequent to the sale. They discovered and sold previously unscheduled assets of the bankrupt's estate. They resolved disputes which arose in forty states concerning the bankrupt estates liability for sales and use taxes. In regard to these tax matters, the settlement agreements and exemptions co-counsel obtained resulted in a benefit to the estate of approximately $70,000.00. Services performed by co-counsel resulted in the disallowance of a substantial amount of unsecured claims as well as the recovery by the estate of approximately $34,000.00 in preferential payments. Finally, F & A and G & S commenced and engaged in complex and difficult litigation against the bankrupt's former president, accountants and auditors. These actions were settled in June of 1981 and, as a result thereof, the bankrupt's estate recovered an additional $435,000.00.

G & S requests a final allowance of $190,000.00 for services rendered and $17,284.17 for expenses.

The services for which G & S seeks compensation were performed over a period of six and one-half years. The court finds that $70.00 per hour is an average reasonable hourly rate for these services. After reviewing the fee application, the court further finds that 5,625 hours were properly recorded and reasonably expended by G & S.

Multiplying the average hourly rate times the number of hours reasonably expended produces a lodestar fee of $393,750.00.

The results obtained by G & S were very favorable to the estate but they were not so spectacular as to warrant an upward adjustment of the lodestar fee.

The final fee for G & S is $393,750.00. G & S has received the following interim allowances for services rendered during the course of these proceedings:

$195,000.00 (individually)
$ 19,000.00 (jointly with F & A)
$214,000.00 total

Thus, G & S is entitled to a final allowance of $179,750.00 calculated as follows:

$393,750.00
$214,000.00
$179,750.00

G & S shall receive an additional allowance of $17,405.92 for expenses.

F & A requests a final allowance of $24,651.50 for services rendered and $419.31 for expenses.

However, the fee applications submitted by F & A do not contain a sufficient description of the services for which compensation is sought. The court will allow this applicant 30 days to submit additional records that will permit a more objective determination of the value of the services rendered.

G & S and F & A jointly request $12,402.00 for services rendered and $2,657.25 for expenses.

Co-counsel shall be fully compensated by their individual allowances for the services which they have rendered. The court has considered all of the services performed by G & S and shall consider all of the services performed by F & A in their individual allowances. No further allowances for services rendered will be made on a joint basis. However, the court will allow jointly to F & A and G & S the $2,657.25 requested for expenses.

SPECIAL COUNSEL TO THE TRUSTEE

On July 27, 1977, the Trustee was authorized to employ John H. Kelleher as special counsel to assist in the litigation against the former president and accountants of Photon. The services rendered by this applicant contributed to the settlement of this litigation on terms which were very favorable to the estate. In addition, John H. Kelleher was employed as an expert by co-counsel to the Trustee to give testimony and render accounting services in another action commenced by the Trustee to recover assets of the estate.

This applicant requests a final allowance of $12,824.24 for services rendered and $8,709.94 for expenses.

The court finds that the reasonable hourly rate for this applicant is $50.00 per hour and that 625 hours were reasonably expended.

Multiplying the reasonable hourly rate times the number of hours reasonably expended results in a lodestar fee of $31,250.00.

No adjustment of the lodestar is warranted.

This applicant has received interim allowances of $24,335.76 for services rendered and $8,709.94 for expenses.

The final allowance to this applicant for services rendered is $6,914.24 and is calculated as follows:

$31,250.00
$24,335.76
$ 6,914.24

The court will also allow the $2,809.58 requested by this applicant for expenses.

### Co-counsel To The Creditors' Committee

On January 2, 1975, the court authorized the employment of the law firm of Widett and Widett ("W & W") as co-counsel to the Creditors' Committee.

This applicant requests $10,201.00 as a final fee for services rendered.

Co-counsel states in its application that because it lost certain time slips it is unable to provide a detailed description of approximately 122 hours of services which it rendered. As other fee applicants have been

provided with an opportunity to submit additional records, the court shall allow this applicant 30 days to file further submissions relating to the undescribed time mentioned above.

### Secretary to Creditors' Committee

■ Herbert C. Kahn, the Secretary to the Creditors Committee requests a final allowance of $3,450.00 for services rendered and $830.70 for expenses.

The court finds that 130 hours were reasonably expended by this applicant and that $65.00 per hour is a reasonable hourly rate for the services performed.

Therefore, the total fee for this applicant is $8,450.00.

The Secretary has received interim payments totalling $7,250.00 for services rendered and $2,869.70 for expenses.

The final fee allowance to this applicant is $1,200.00, calculated as follows:

$8,450.00
–$7,250.00
$1,200.00

This applicant has already been compensated for the expenses set forth in his application. Therefore, he will receive no further allowances for expenses.

### Special Accountant To The Trustee

■ Arthur R. Hills, Special Accountant to the Trustee requests $21,922.00 for services rendered and $473.00 for expenses.

A total of 256.3 hours were reasonably expended by this applicant. The court will apply a reasonable hourly rate of $70.00 per hour. Thus, the total fee to which this applicant is entitled is $17,941.00.

Interim payments to this applicant for services rendered total $3,200.00.

Therefore, Arthur R. Hills is entitled to a final fee allowance of $14,741.00.

The court will also allow the $473.00 requested for expenses.

### Accountant To The Receiver

■ Arthur Young & Co., Accountant to the Receiver requests a fee of $57,034.00 for services rendered and $2,440.00 for expenses.

A total of 1,536 hours were properly recorded and reasonably expended by Arthur Young & Co. A reasonable hourly rate for this applicant is $60.00 per hour. Accordingly, this applicant is entitled to a total fee of $92,160.00.

Interim payments to this applicant for services rendered aggregate to $49,386.00.

Thus, this applicant is entitled to a final fee allowance of $42,774.00.

The court will also allow the $2,440.00 requested by Arthur Young & Co. for expenses.

### Accountant To The Trustee

M.G. Sherman, Accountant to the Trustee requests a fee of $5,125.25 for services rendered.

This applicant has received interim fee payments totalling $54,128.00.

The court shall grant this applicant a final allowance of $4,200.00.

### Special Counsel To The Trustee

■ On June 14, 1978, the court authorized the Trustee to employ Mann & Ungar, P.A. ("M & U") as special counsel to assist in the litigation against the former accountants and president of the bankrupt. M & U had previously engaged in litigation against Photon Inc. during which it had uncovered various documents and data. The subject matter of this prior litigation was similar to the claims later asserted by the Trustee. M & U assisted co-counsel to the Trustee by sharing with co-counsel the knowledge, expertise and data that M & U had acquired from the prior litigation. This assistance reduced the expense to the Trustee in preparing the later actions for trial.

M & U requests that it be discharged from its duties as special counsel and that the court find that M & U's attorney's fees for services rendered have been satisfied by

a $5,000.00 retainer previously paid to it by the Trustee. In its application, M & U states that it devoted thirty-six hours to matters relating to the litigation by the Trustee. Using the lodestar method, the court finds that $3,600.00 is a reasonable allowance for these services and that this applicant must return $1,400.00 to the estate.

## ORDER RE FINAL FEES

Upon application and due notice having been given and a hearing held and good cause appearing therefore, it is hereby

ORDERED:

That the following final allowances be, and they hereby are, granted:

(1) Gaston Snow & Ely Bartlett, Co-counsel for Trustee.

| | |
|---|---|
| For services | $179,750.00 |
| For expenses | $ 17,405.92 |

(2) Friedman & Atherton and Gaston Snow & Ely Bartlett, Co-counsel to the Trustee, Joint Petition.

| | |
|---|---|
| For expenses | $ 2,657.25 |

(3) John H. Kelleher, Special Counsel to the Trustee.

| | |
|---|---|
| For services | $ 6,914.24 |
| For expenses | $ 2,809.58 |

(4) Herbert C. Kahn, Secretary to the Creditors' Committee.

| | |
|---|---|
| For services | $ 1,200.00 |

(5) Arthur R. Hills, Special Accountant to the Trustee.

| | |
|---|---|
| For services | $ 14,741.00 |
| For expenses | $ 473.00 |

(6) Arthur Young & Co., Accountant to the Receiver.

| | |
|---|---|
| For services | $ 42,774.00 |
| For expenses | $ 2,440.00 |

(7) M. G. Sherman, Accountant to the Trustee.

| | |
|---|---|
| For services | $ 4,200.00 |

It is further ORDERED:

That the following monies be disgorged and returned to the estate:

(1) Goodwin, Procter & Hoar, Counsel to the Debtor.

$ 18,568.11

(2) Mann & Ungar, Special Counsel to the Trustee.

$ 1,400.00

## SUPPLEMENTAL MEMORANDUM DECISION RE FINAL ALLOWANCES AND ORDER RE MOTION FOR RECONSIDERATION

On July 29, 1982, this court issued a memorandum and order regarding final fee awards to professionals who rendered services in the Chapter XI and bankruptcy proceedings of Photon, Inc. ("Photon"). In that order, I allowed certain fee applicants additional time to submit time sheets and other documentation containing a sufficient description of the services for which compensation was sought. The requested materials have been submitted to and reviewed by the court. The final fee awards to the applicants in question have been determined in accordance with the legal standards set forth in this court's memorandum of July 29, 1982. Those awards are the subject of this supplemental memorandum and order.

Additionally, Goodwin, Procter & Hoar ("G.P. & H.") has moved the court for reconsideration of the July 29, 1982 Memorandum Order. That motion is treated herein.

## RECEIVER—TRUSTEE

On November 12, 1974, Edward F. McLaughlin was appointed Receiver in the Photon Arrangement proceedings and he was authorized to operate the business of the Debtor. On February 14, 1975, he was appointed Trustee in bankruptcy of Photon and, by order of this court, he continued to operate the business of the bankrupt until the sale thereof on March 31, 1975. Subsequent to this sale, the Trustee monitored certain litigation matters which were commenced and prosecuted by his co-counsel.

During his tenure as Receiver-Trustee, this applicant spent a substantial amount of time at the Photon plant where he took possession of and ascertained the value of

the assets of the company. He engaged in negotiations with the Prudential Insurance Company, a secured creditor of Photon, in order to obtain financing for the company's operations during the arrangement proceedings. He also participated in negotiations involving royalty and patent license agreements. A considerable amount of time was spent working with potential buyers of the business and exploring the possibility of a merger of Photon with other companies. This applicant provided numerous services that pertained to the general operation of the business. These services were directed at problems involving account receivables, inventory, payroll, taxes, leases, insurance, and payment of utility bills. The Receiver-Trustee provided information to creditors and stockholders and he also took steps to employ the professionals and personnel who were needed to operate the business. He rendered additional administrative services which included: attending creditors' committee meetings; collecting and disbursing funds; paying priority dividends; paying a five percent dividend to unsecured creditors; and assisting with the closing of the estate.

The Receiver-Trustee requests a final allowance of $78,749.24 for services rendered. He also seeks an allowance of $56.71 for expenses. He has already received a total of $131,350.76 in interim payments. This applicant bases his fee request upon the statutory maximum commission that he could receive under §§ 48a(3) and 48c(2) of the Bankruptcy Act. After performing the necessary calculations under these provisions, he concludes that he is entitled to fees and commissions in excess of $210,000.00.

▉ Section 48 merely establishes a maximum commission. It does not require payment of that maximum. *Matter of Myley Electrical Supply Co.,* 287 F. 524 (2nd Cir.1923); *Matter of Georgian Villa, Inc.,* 8 B.R. 875 (Bkrtcy., N.D.Ga.1981); *Matter of D.H. Overmyer Co., Inc.,* 3 B.R. 678 (Bkrtcy., S.D.N.Y.1980). Allowances to bankruptcy officers are computed from accurate records of services performed. *See Matter of Beverly Crest Convalescent Hospital, Inc.,* 548 F.2d 817 (9th Cir.1976). The court must consider such factors as: the fair value of the time and labor required as measured by ordinary business standards; the degree of activity, integrity and dispatch with which the work has been performed; and the results achieved. *Matter of D.H. Overmyer, supra,* at 684. The court should also consider the complexity of the issues involved.

The most difficult problems that confronted the Receiver-Trustee arose in connection with the continuation of the Debtor's business. Photon was a publicly-traded company with thousands of shareholders and $17,000,000.00 in institutional debt. The company had five domestic and five international subsidiaries. Although its two manufacturing facilities were located in Massachusetts, Photon maintained research facilities in Florida and sales offices in foreign countries. The operation of this complex enterprise was a difficult task requiring a high level of business acumen. The court notes, however, that the business only operated for a four and one-half month period and that the other administrative duties assumed by this officer were not of a particularly arduous nature. The Receiver-Trustee participated in various litigation matters that concluded with a very favorable impact upon the estate. That protracted litigation involved complicated accounting and tax issues and required constant monitoring and sophisticated decision making by this applicant. Nevertheless, the main burden for prosecuting that litigation was shouldered by Co-counsel to the Trustee.

After weighing the above factors and reviewing the record of services rendered, I conclude that this applicant has been fully compensated by the interim payments he has already received.

### Co-counsel To The Receiver-Trustee

▉ On November 25, 1974, this court authorized the employment of Frank H. Shapiro on behalf of the law firm of Friedman & Atherton ("F & A") as attorney for the Receiver in the Chapter XI proceedings.

On February 14, 1975, the Trustee was authorized to employ Frank H. Shapiro as his counsel in the Photon bankruptcy proceedings.

In the early stages of these proceedings, Friedman & Atherton familiarized itself with the operations of Photon and analyzed the company's rights and obligations under various security agreements, loan documents and purchase orders. F & A negotiated with telephone companies and other utilities and suppliers of Photon in order to prevent disruption of the business operations during the Chapter XI proceedings. This applicant helped arrange for borrowing by the Receiver-Trustee and researched the feasibility of a merger with other companies. F & A rendered legal services relating to problems involving franchise agreements, trademarks, copyrights, the assumption and rejection of contracts, the status of foreign subsidiaries, and demands by patent holders for royalties. F & A prepared documentation and rendered services regarding the sale of all of the assets of Photon as a going concern. Counsel's negotiations with parties who had objected to the sale resulted in the withdrawal of those objections. This applicant monitored an action brought against Photon and its officers and directors seeking damages for filing false financial statements with the Security and Exchange Commission. Although the plaintiffs in that action obtained a verdict in their favor, there was no adverse impact upon the bankruptcy estate. Counsel helped negotiate settlement agreements and obtain exemptions concerning the estate's liability for sales and use taxes. F & A rendered services that resulted in the recovery by the estate of preferential payments and the disallowance of unsecured claims. This applicant helped prosecute and obtain a successful settlement of the complex litigation against the bankrupt's former president, accountants and auditors.

F & A requests a final allowance of $24,651.50 for services rendered and $419.31 for expenses. Counsel has already received interim awards totalling $170,200.00 in fees and $6,812.00 for expenses.

The court shall apply the standard set forth in *Furtado v. Bishop,* 635 F.2d 915 (1st Cir.1980) to determine this applicant's final fee award.

After reviewing the materials submitted by F & A I find that 2,460 hours were reasonably expended by F & A in representation of the Receiver-Trustee. I find that a reasonable hourly rate of $70.00 per hour should be applied.

Multiplying the reasonable hourly rate times the number of hours reasonably expended results in a lodestar fee of $172,200.00.

No further adjustment of the lodestar is warranted.

Subtracting the interim payments already received by F & A from its lodestar fee results in a final fee allowance of $2,000.00. F & A is also entitled to a final allowance for expenses in the amount of $419.31.

GASTON SNOW & ELY BARTLETT

The court has recalculated the fee award to Gaston Snow & Ely Bartlett and finds that counsel is entitled to an additional $5,400.00 fee allowance.

CO–COUNSEL TO THE CREDITORS' COMMITTEE

The court allowed the law firm of Widett & Widett ("W & W") additional time to submit documentation in support of its application for final allowances because it had misplaced various time records. The confusion apparently was the result of a schism that developed in the firm during the years in question and the conversion of the firm's billing recording method from a manual system to a computerized one. Upon reconstruction of various records and time charts, W & W has submitted a verified fee application that delineates 302.8 hours expended by the firm as co-counsel to the Creditors' Committee of Photon. W & W also requests allowance of 25 hours of unbilled time for which a detailed statement of services is not available. The total amended fee requested is $43,620.00; W &

W has received $23,000.00 in interim payments, leaving a balance requested of $20,620.00.

Upon review of the amended application, the services rendered by W & W included the following: evaluation of the proposed plan of arrangement and financing thereof; examination of the original Chapter XI petition; review of the terms of borrowing by the Receiver; review of the Securities and Exchange Commission reports; preparation of an application for indemnity; and work on matters relating to a sale of all of the assets of Photon.

In view of the ability and experience of the attorneys and the customary fee in the community at the time the services were rendered, the court finds that $75.00 per hour is a reasonable hourly rate for this applicant. The court finds that the 302.8 hours rendered by the applicant for which there is submitted a detailed description are fully compensable from this estate. As to the 25 unbilled hours for which there is no such description, the court would normally disallow these hours. *In re Garland Corp.,* 8 B.R. 826 (Bkrtcy., D.Mass.1981). However, I am satisfied that these services were in fact rendered, and find that good cause exists for the non-production of detailed records for these 25 hours. *In re Meade Land & Development Co., Inc.,* 527 F.2d 280 (3rd Cir.1975). Accordingly, the total allowed hours is 327.8 hours.

Multiplying the reasonable hourly rate of $75.00 per hour times the allowed hours of 327.8 results in a lodestar fee of $24,585.00. No further adjustment of the lodestar fee is warranted and as W & W has received $23,000.00 in interim awards, the final allowance to W & W is $1,585.00.

## COUNSEL TO THE DEBTOR/BANKRUPT

The law firm of Goodwin, Procter and Hoar ("G.P. & H.") requests that the court reconsider the July 29, 1982 Memorandum and Order denying G.P. & H. compensation for post adjudication services that should have been rendered by Trustee's co-counsel on the basis that (1) a portion of the time expended by G.P. & H. after adjudication related to the performance of duties imposed upon bankrupt's counsel by the Bankruptcy Act; (2) the services rendered benefited the estate; and (3) the allowed $65.00 hourly rate is inappropriate in light of the seniority of G.P. & H. attorneys working on the case. For the reasons set forth in the July Memorandum and as supplemented below, the Motion for Reconsideration of Final Allowances is denied.

G.P. & H. is mistaken that the court disallowed all compensation for post adjudication services and that there was no allowance for the filing of schedules and attending the First Meeting of Creditors. The petition for fee and the affidavit accompanying it filed by G.P. & H. lists 815.25 hours of services expended by G.P. & H. prior to Photon's adjudication. The court's examination of G.P. & H's detailed time statement and addition of the hours enumerated therein, however, revealed that G.P. & H. had rendered only 799 hours of services prior to adjudication. G.P. & H's fee award was based upon 805 hours of attorney time and 45 hours of paralegal time in order to compensate counsel for the bankrupt for the performance of these services. The allowance for these services was less than that claimed by G.P. & H. and was primarily attributed to paralegal time by the court because such work is largely clerical in nature and is appropriately performed by paralegals with attorney time limited to supervision of that work.[1] Accordingly, there is no basis to increase G.P. & H's allowance based upon this contention.

As to the purported benefits derived from G.P. & H.'s post adjudication services by this bankrupt estate, I am obliged under these circumstances to follow the reasoning enunciated in the *Matter of Owl Drug Company*[2] nearly fifty years ago, where the

---

1. *See 3A Collier on Bankruptcy* ¶ 62.31 [3.1] (14th ed. 1975) and cases cited therein.

2. 16 F.Supp. 139 (D.Nev.1936), 31 Am.B.R. (N.S.) 763, aff'd *sub. nom. Cohn v. Edler,* 90 F.2d 823 (9th. Cir.1937), 34 Am.B.R. (N.S.) 367;

court, after discussing the long line of cases disallowing unauthorized volunteers compensation from bankrupt estates, said:

> One can readily see the wisdom of these rulings. Were the law otherwise, there would be no limit to the burden which might be placed upon an estate if attorneys for the bankrupt or individual creditors could, by doing work which *it is not* their duty to do, by assisting the trustee, without an order of court allowing their special employment, burden the estate with the added cost of performing work which it is *the duty* of others to perform. The bankruptcy court would lose control in the matter of fees. "Volunteers" would be numberless. And it is almost certain that in every estate of *any* size, the courts would be confronted with claims for "voluntary" assistance. Hence the practical wisdom of these rulings, sanctioned by our own Circuit Court, that the attorney for the bankrupt be not compensated for work which the bankrupt *is not under legal obligation to do, but which it is the duty of the receiver, trustee or their attorneys to perform.* (Emphasis supplied.) 16 F.Supp. at 148.

In the instant case, the court cannot burden this estate with the expense of G.P. & H's unauthorized services where the estate was already adequately represented by Co-Counsel and Special counsel to the Trustee. Finally, as to the propriety of the allowed hourly rate, I am unpersuaded that results achieved in the aborted Chapter XI require reconsideration of the allowed $65.00 hourly rate. The services for which compensation is requested were primarily rendered during the years 1974 and 1975 and the allowed rate is entirely reasonable in light of the circumstances existing at that time. *See Souza v. Southworth,* 564 F.2d 609 (1st. Cir.1977); *Lund v. Affleck,* 587 F.2d 75 (1st. Cir.1978). No adjustment of this hourly rate due to the length of this proceeding is warranted as G.P. & H. has had possession of the $50,000.00 retainer since 1974 and the interim allowance since June, 1977.

see also *3A Collier on Bankruptcy* ¶ 62.31 [3.4] (14th. ed. 1975).

Accordingly, G.P. & H's. motion for reconsideration is denied and G.P. & H. is hereby ordered to forthwith disgorge $18,568.11 to the estate.